# UNITED STATES DISTRICT COURT

FILED

JUN 1 6 2022

for the

Northern District of Oklahoma

Mark C. McCartt, Clerk
U.S. DISTRICT COURT

| | |
|---|---|
| In the Matter of the Search of **INFORMATION ASSOCIATED WITH INSTAGRAM ACCOUNT USER IDS:** **ID:50416429509** **ID:11543316551** **THAT ARE STORED AT A PREMISES CONTROLLED BY META PLATFORMS, INC.** | ) ) ) ) ) Case No. 22-MJ-385-JFJ<br><br>**FILED UNDER SEAL** |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment "A." This court has authority to issue this warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A).
located in the ___Northern___ District of ___California___, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment "B"

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
|---|---|
| **18 U.S.C. §§ 1151, 1152, 1153, and 1111** | **First Degree Murder in Indian Country** |
| **18 U.S.C. § 924(c)(1)(A)(iii)** | **Discharging a Firearm in Furtherance of a Crime of Violence** |

The application is based on these facts:
**See Affidavit of SA Laura Tuteral, FBI, attached hereto.**

☑ Continued on the attached sheet.

☐ Delayed notice of ___ days (give exact ending date if more than 30 days: _____ ) is requested
under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

**SA Laura Tuteral, FBI**
*Printed name and title*

by phone · gg
Sworn to before me and signed in my presence.

Date: 6/16/22

*Judge's signature*

City and state: Tulsa, Oklahoma

Jodi F. Jayne, U.S. Magistrate Judge
*Printed name and title*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

IN THE MATTER OF THE SEARCH
OF INFORMATION ASSOCIATED
WITH INSTAGRAM ACCOUNT
USER IDs:
ID: 50416429509
ID: 11543316551
THAT ARE STORED AT A
PREMISES CONTROLLED BY
META PLATFORMS, INC.

FILED UNDER SEAL

Case No. _____

### Affidavit in Support of an Application for a Search Warrant

I, Laura M. Tuteral, being first duly sworn under oath, depose and state:

### Introduction and Agent Background

1.    I make this affidavit in support of an application for a search warrant for

information associated with certain Instagram accounts listed below that are stored

at premises owned, maintained, controlled, or operated by Meta Platforms, Inc.

("Meta"), an electronic communications service and/or remote computing service

provider headquartered at 1601 Willow Road in Menlo Park, California.  The

information to be searched is described in the following paragraphs and in

Attachment A.  This affidavit is made in support of an application for a search

warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A), and 2703(c)(1)(A) to require

Meta to disclose to the government copies of the information (including the content

of communications) further described in Section I of Attachment B.  Upon receipt of

the information described in Section I of Attachment B, government-authorized

persons will review that information to locate the items described in Section II of Attachment B.

2.    I am a Special Agent with the Federal Bureau of Investigation (FBI) and have been since 2014. Prior to being employed by the FBI, I served as a Federal Air Marshal for approximately four years. I received a Bachelor of Arts Degree in Criminal Justice and English with a Minor in Biology from Indiana University in 2008. As a Special Agent, I attended and completed the FBI Academy in 2015. During this training, I received detailed academic and practical training in the areas of, but not limited to narcotics enforcement, drug identification, violent crime and gang investigations, and other law enforcement and investigative techniques. Following my formal training at the academy, I completed the National Homicide Investigators Course in New York City and was also trained as Evidence Response Team member and Assistant Team Leader. I am currently assigned to Tulsa FBI Resident Agency and work with the Tulsa Police Department (TPD) Homicide Unit where I investigate various homicide related cases. I was previously assigned with the Newark FBI field office as a member of the Gang and Violent Crime squad where I investigated various violations of federal law and participated in many investigations.

3.    I am familiar with the facts and circumstances of this investigation. The facts set forth in this affidavit are based on my personal observations, knowledge obtained from other law enforcement officers, my review of documents related to this

2

investigation, conversations with others who have personal knowledge of the events and circumstances described herein, and a review of open-source information including information available on the Internet. Because this affidavit is submitted for the limited purpose of establishing probable cause in support of the application for a search warrant, it does not set forth each and every fact that I or others have learned during the course of this investigation.

4.  Based on my training, research, experience and the facts as set forth in this affidavit, there is probable cause to believe the identified Instagram accounts contain evidence, fruits, and instrumentalities of violations of 18 U.S.C. §§ 1151, 1152, 1153, and 1111 (First Degree Murder in Indian Country); and 18 U.S.C. § 924(c)(1)(A)(iii) (Discharging a Firearm in Furtherance of a Crime of Violence) have been committed by known and unknown subject(s).

5.  This application is made for the Instagram account:

1. **ID: 50416429509**
2. **ID: 11543316551**

### Jurisdiction

6.  This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A), & (c)(1)(A). Specifically, the Court is "a district court of the United States . . . that has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

7. When the government obtains records pursuant to § 2703, or pursuant to a search warrant, the government is not required to notify the subscriber of the existence of the warrant. 18 U.S.C. § 2703(a), (b)(1)(A), (c)(2), and (3). Additionally, the government may obtain an order precluding Meta from notifying the subscriber or any other person of the warrant, for such period as the Court deems appropriate, where there is reason to believe that such notification will seriously jeopardize the investigation. 18 U.S.C. § 2705(b).

### Probable Cause

8. At all times relevant to this Affidavit, the victim, BRADLEE GUSTAVUS-HALE, was a member by blood of the Osage Nation, a federally recognized tribe.

9. Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of 18 U.S.C. §§ 1151, 1152, 1153, and 1111 (First Degree Murder in Indian Country); and 18 U.S.C. § 924(c)(1)(A)(iii) (Discharging a Firearm in Furtherance of a Crime of Violence) have been committed by an unknown subject(s) (unknown Indian status), all of which resulted in the death of GUSTAVUS-HALE. GUSTAVUS-HALE's murder occurred in the vicinity of 1815 S. 132nd East Place, Tulsa, Oklahoma, which lies within the boundaries of the Muscogee Creek Nation Reservation.

10. On the evening of January 22, 2022, an unknown subject(s) willfully, intentionally, feloniously, and with a premeditated design to effect death, killed GUSTAVUS-HALE.

4

11.    On January 22, 2022, Tulsa Police Department officers were working an unrelated call in the At Home parking lot located at 11015 E. 51st Street in Tulsa, Oklahoma. A car pulled up to the officers who found the front seat passenger, GUSTAVUS-HALE, with a gunshot wound. The driver of the car was SARA GUSTAVUS, the victim's mother.

12.    SARA GUSTAVUS stated that her son, GUSTAVUS-HALE, called her and asked for a ride to get some money. SARA assumed this meant GUSTAVUS-HALE was going to sell someone marijuana. SARA picked up GUSTAVUS-HALE from his apartment and drove him to the Summer Stone duplexes, located on S. 132nd East Place in Tulsa. As they approached the location, SARA stated she found out GUSTAVUS-HALE was planning on selling a gun to his friend. SARA believed this was a customer GUSTAVUS-HALE met at work. GUSTAVUS-HALE works at a marijuana dispensary. SARA began to argue with GUSTAVUS-HALE about the gun, but GUSTAVUS-HALE told her he needed the money for rent.

13.    SARA stated that she drove into the duplex complex and GUSTAVUS-HALE asked the buyer as to where they should meet. SARA stated that they saw the buyer in the street and pulled part-way into the driveway of the duplex that the buyer identified as his home. The buyer got into the back seat of the car behind SARA. GUSTAVUS-HALE exchanged the gun for cash, but SARA did not know how much money was exchanged. SARA described the buyer as a black male,

approximately 5'5" with a normal build. SARA stated she did not know for sure what the buyer looked like.

14. After the sale, the buyer then got out of the car and SARA reversed the car to drive away. As she did so, an individual came up to the car from behind on the driver side of the car. The suspect pulled out a gun and pointed it at the car. As soon as SARA saw the gun, she hit the gas to leave. SARA stated she thought the suspect said something like, "give me all your fucking money." SARA stated GUSTAVUS-HALE said "what the fuck?" as she started to drive away. As they drove away, SARA heard multiple gunshots.

15. SARA stated that when she reached E. 21st St. from the complex, GUSTAVUS-HALE stated either, "Shit, I've been shot" or "Shit, he shot me." SARA saw that GUSTAVUS-HALE was shot in the left shoulder. SARA turned on her hazard lights, held her son's head, and drove as fast as possible South on Mingo Road towards St. Francis Hospital. SARA saw police officers at 51st and Mingo so she drove into the parking lot towards them for help.

16. GUSTAVUS-HALE was later pronounced dead at St. Francis Hospital.

17. The Tulsa Police Department (TPD) Homicide Division began investigating and retrieved GUSTAVUS-HALE's cell phone from SARA's car. GUSTAVUS-HALE's girlfriend provided police officers the passcode for his phone. Officer's looked at GUSTAVUS-HALE's phone and found a conversation with Instagram User LLT_YUNGIN. GUSTAVUS-HALE communicated with LLT_YUNGIN

immediately prior and up to the point of the gun sale at Summer Stone duplexes. The conversation included the sale and purchase of three firearms that particular night. GUSTAVUS-HALE and LLT_YUNGIN engaged in a video call through Instagram at approximately 8:04pm on January 22, 2022.

18. Summer Stone Duplex surveillance shows SARA's vehicle entering the complex at approximately 8:02pm. After entering the complex, SARA stated GUSTVUS-HALE participated in a video phone call to learn the exact meeting location from the buyer. SARA stated the buyer acknowledged he saw GUSTAVUS-HALE and told him "there's my guy," referring to the person up ahead in the street.

19. A subject(s) has yet to be located and arrested. On January 25, 2022, the Honorable Judge Susan E. Huntsman issued a search warrant for the review of LLT_YUNGIN Instagram account. *See* 21-MJ-51. The return of that search was provided to law enforcement on February 14, 2022. A review of that account showed messages and communication with other associates potentially involved with the gun deal.

20. On March 14, 2022, TPD Homicide Detectives spoke with Elizabeth Crawford, who is the sister of ZION CRAWFORD. Ms. Crawford confirmed that JAYVION VALENTINE is the owner of Instagram account LLT_YUNGIN (ID: 46253193790) after identifying a photograph from that account as VALENTINE. Ms. Crawford also stated that VALENTINE was communicating through Instagram with GUSTVUS-HALE regarding the sale of a gun on the night of the homicide. She

7

also indicated that VALENTINE, DARIUS, ZION CRAWFORD, and EJ were present at ZION CRAWFORD's house the night of the homicide prior to the shooting.

### Instagram User: LLT_KJ (ID: 5041642905)

21.  It is believed **LLT_KJ (ID: 5041642905)** belongs to an individual named "KJ," who has been identified by law enforcement to be **KOLLEA JONES**. This same Instagram account is also affiliated with usernames **KJTOSLEAZY_**, **KJSOSLEAZY_**, and **KJSOSLEAZE_**. According to a review of LLT_YUNGIN's Instagram account, messages were exchanged approximately four hours prior to the homicide of GUSATAVUS-HALE on January 22, 2022 with **LLT_KJ** referencing LLT_YUNGIN and others heading to "Z's" house, who law enforcement knows to be ZION CRAWFORD.

| | |
|---|---|
| **Author** | llt_kj (Instagram: 50416429509) |
| **Sent** | 2022-01-22 21:26:05 UTC |
| **Body** | Wya |
| **Author** | llt_yungin (Instagram: 46253193790) |
| **Sent** | 2022-01-22 21:26:18 UTC |
| **Body** | east |
| **Author** | llt_kj (Instagram: 50416429509) |
| **Sent** | 2022-01-22 21:26:27 UTC |
| **Body** | Z shii ? |

| Author | |
|---|---|
| | llt_yungin (Instagram: 46253193790) |
| Sent | 2022-01-22 21:26:31 UTC |
| Body | finna be |
| | |
| Author | llt__kj (Instagram: 50416429509) |
| Sent | 2022-01-22 21:26:40 UTC |
| Body | Who u wit ? |
| | |
| Author | llt_yungin (Instagram: 46253193790) |
| Sent | 2022-01-22 21:26:51 UTC |
| Body | my ppls |
| | |
| Author | llt__kj (Instagram: 50416429509) |
| Sent | 2022-01-22 21:26:58 UTC |
| Body | lgh |

22.     Law enforcement also learned from Elizabeth Crawford that her Instagram account is "renaetheedoll_". As noted above, Elizabeth Crawford told law enforcement that her brother "Zion" (ZION CRAWFORD), "Darius" and "EJ" were at her house on January 22, 2021.



23.   Through a review of a search warrant return on Instagram account

DARIISPAMM_ (ID: 50976557593) belonging to DARIUS, **KJSOSLEAZY_**

exchanges messages with DARIISPAMM_ on January 19, 2022.

### Instagram User: "OFFICIAL.9MILI"/"LLT.9MILI"/"OFFICIAL.9MILII" (ID: 45215121209)

24.   On the night of January 24, 2022, Detective John Brown of the TPD

Homicide Division spoke with ZION CRAWFORD. CRAWFORD told Det.

Brown that his Instagram account was "9MILLI." Through username searches in

Instagram, law enforcement determined that OFFICIAL.9MILI, LLT.9MILI, and

OFFICIAL.9MILII are account variations associated with account ID: 45215121209.

25. As depicted below, LLT_YUNGIN (ID: 46253193790) told LLT.9MILI (ID: 45215121209) the night of the homicide that he was "fenna" be at his house at 3:37:41pm CST. LLT.9MILI (ID: 45215121209) replied to LLT_YUNGIN (ID: 46253193790) by saying "we going to get some bullets." LLT_YUNGIN (ID: 46253193790) responds, "bet."

26. Based off my training and experience working homicide cases, I know that to mean that LLT.9MILI (ID: 45215121209) was asking about getting bullets and by LLT_YUNGIN (ID: 46253193790) responding with "bet" means "yes." Of note, this discussion occurred less than five hours before the GUSTAVUS-HALE homicide.



27. Additionally, as previously depicted in paragraph 23, LLT.9MILI (ID: 45215121209) asked "renaetheedoll_" a few minutes later after the conversation about "bullets" who was at his house and 'renaetheedoll_' replied "zion darius and ej." As previously noted, 'renaetheeoll' is known to TPD detectives to be Elizabeth Crawford, the sister of ZION CRAWFORD. Both Elizabeth and ZION CRAWFORD live together in their mother's house.

### Instagram User: FAMOUSS. K3 (ID: 11543316551)

28. On approximately February 18, 2022 a confidential informant known to Tulsa Police Department homicide detectives identified **KJ**, EJ, and ZION in the below photograph. **KJ** is identified as the individual standing third from the right.

This photograph is also the profile picture found to belong to Instagram account user

**FAMOUSS._K3.**



**FAMOUSS._K3** was last active in June 2021 and follows **KJSOSLEAZY_**,

TBLOCCCRAZY, OFFICIAL.9MILI, RENAETHEEDOLL_, and the Instagram

account belonging to DARIUS, DARIISPAMM_ (ID: 50976557593). It is believed

that **KJ** stopped using the Instagram account **FAMOUSS._K3** at some point in 2021

and switched to **ID: 5041642905**, associated with usernames **LLT_KJ,**

**KJTOSLEAZY_, KJSOSLEAZY_,** and **KJSOSLEAZE_.**

29. On May 18, 2022, Tulsa Police Department homicide detectives interviewed DARIUS TOBIE. DARIUS stated EJ, ZION, JAY, and **KJ** were at ZION's house the night of GUSTAVUS-HALE's homicide, as they had all spent the night at ZION's house the night before the homicide and had been in and out of the house all day. DARIUS stated prior to the homicide, EJ, ZION, JAY, and **KJ** went into the bathroom without him to talk about a "lick" they were planning on doing that night. DARIUS stayed at ZION's house when the four men left. After they got back later that night, **KJ** and JAY argued about the guns they had received from the "lick." KJ then walked off and DARIUS was unaware of where he went. DARIUS identified **KJ**, EJ, and ZION in the picture found above and stated the three of them and JAY committed the robbery of GUSTAVUS-HALE.

30. A search warrant for Instagram account **ID: 50416429509 and 11543316551** accounts will likely contain evidence of who was using the Instagram account and from where, as well as additional evidence related to the planning and organization prior to the gun deal and homicide of GUSTAVUS-HALE.

31. Since **KJ**, JAYVION VALENTINE, DARIUS, ZION CRAWFORD, and EJ were present at ZION CRAWFORD's house the night of the homicide and a discussion occurred on Instagram between VALENTINE and **KJ** about all of them meeting at CRAWFORD's house, a review of the Instagram accounts belonging to KJ **(ID: 50416429509 and 11543316551)** will provide messages, video calls, photographs, and location information that can be compared to the location of the

homicide before, during, and after the fact. Furthermore, the records can provide additional information that could lead to the identification of others involved in the homicide investigation, to include the potential whereabouts of the subject(s) him/herself, as well as possession of loot and/or weapons.

32. At this stage of the investigation, your Affiant knows that LLT_YUNGIN (ID: 46253193790), DARIUS (ID: 50976557593), ZION CRAWFORD (ID: 45215121209), EJ (ID: 35612048637), and **KJ (IDs: 50416429509 and 11543316551)** were all together at ZION CRAWFORD's house shortly before the homicide. Further, your Affiant knows that LLT_YUNGIN (ID: 46253193790) and ZION CRAWFORD (ID: 45215121209) discussed getting bullets while they were both arranging to meet with DARIUS (ID: 50976557593), EJ (ID: 35612048637), and **KJ (IDs: 50416429509 and 11543316551)**. Further, your Affiant knows that GUSTAVUS-HALE arranged through Instagram to sell LLT_YUNGIN (ID: 46253193790) a gun before he was murdered. Based on the facts presented, I reasonably believe conversations regarding robbing GUSTAVUS-HALE occurred through Instagram. I also reasonably believe that obtaining **KJ (IDs: 50416429509 and 11543316551)** Instagram records for the month preceding GUSTAVUS-HALE's murder (back to **December 22, 2021**) would be sufficient to assist in my investigation. Finally, I reasonably believe that obtaining these Instagram records through the present would assist me in determining the account holders' pattern of life, any attempts to conceal their criminal involvement, as well as assist in

15

determining the account holders current whereabouts, which would aid in my investigation. I reasonably believe that by receiving a search warrant for the target accounts, I will be able to further my investigation into the circumstances surrounding the murder of GUSTAVUS-HALE.

33.  FBI and TPD has requested that Meta preserve **KJ's (IDs: 50416429509 and 11543316551)** Instagram accounts.

### Instagram Background

34. Instagram is a service owned by Meta Platforms, Inc, ("Meta") a United States company and a provider of an electronic communications service as defined by 18 U.S.C. §§ 3127(1) and 2510.  Specifically, Instagram is a free-access social networking service, accessible through its website and its mobile application, that allows subscribers to acquire and use Instagram accounts, like the target account(s) listed in Attachment A, through which users can share messages, multimedia, and other information with other Instagram users and the general public.

35.  Meta collects basic contact and personal identifying information from users during the Instagram registration process.  This information, which can later be changed by the user, may include the user's full name, birth date, gender, contact e-mail addresses, physical address (including city, state, and zip code), telephone numbers, credit card or bank account number, and other personal identifiers.  Meta keeps records of changes made to this information.

36. Meta also collects and retains information about how each user accesses and uses Instagram. This includes information about the Internet Protocol ("IP") addresses used to create and use an account, unique identifiers and other information about devices and web browsers used to access an account, and session times and durations.

37. Each Instagram account is identified by a unique username chosen by the user. Users can change their usernames whenever they choose but no two users can have the same usernames at the same time. Instagram users can create multiple accounts and, if "added" to the primary account, can switch between the associated accounts on a device without having to repeatedly log-in and log-out.

38. Instagram users can also connect their Instagram and Facebook accounts to utilize certain cross-platform features, and multiple Instagram accounts can be connected to a single Facebook account. Instagram accounts can also be connected to certain third-party websites and mobile apps for similar functionality. For example, an Instagram user can "tweet" an image uploaded to Instagram to a connected Twitter account or post it to a connected Facebook account, or transfer an image from Instagram to a connected image printing service. Meta maintains records of changed Instagram usernames, associated Instagram accounts, and previous and current connections with accounts on Meta and third-party websites and mobile apps.

39. Instagram users can "follow" other users to receive updates about their posts and to gain access that might otherwise be restricted by privacy settings (for example, users can choose whether their posts are visible to anyone or only to their followers). Users can also "block" other users from viewing their posts and searching for their account, "mute" users to avoid seeing their posts, and "restrict" users to hide certain activity and prescreen their comments. Instagram also allows users to create a "close friends list" for targeting certain communications and activities to a subset of followers.

40. Users have several ways to search for friends and associates to follow on Instagram, such as by allowing Meta to access the contact lists on their devices to identify which contacts are Instagram users. Meta retains this contact data unless deleted by the user and periodically syncs with the user's devices to capture changes and additions. Users can similarly allow Meta to search an associated Facebook account for friends who are also Instagram users. Users can also manually search for friends or associates.

41. Each Instagram user has a profile page where certain content they create and share ("posts") can be viewed either by the general public or only the user's followers, depending on privacy settings. Users can customize their profile by adding their name, a photo, a short biography ("Bio"), and a website address.

42. One of Instagram's primary features is the ability to create, edit, share, and interact with photos and short videos. Users can upload photos or videos taken with

18

or stored on their devices, to which they can apply filters and other visual effects, add a caption, enter the usernames of other users ("tag"), or add a location. These appear as posts on the user's profile. Users can remove posts from their profiles by deleting or archiving them. Archived posts can be reposted because, unlike deleted posts, they remain on Meta's servers.

43. Users can interact with posts by liking them, adding or replying to comments, or sharing them within or outside of Instagram. Users receive notification when they are tagged in a post by its creator or mentioned in a comment (users can "mention" others by adding their username to a comment followed by "@"). An Instagram post created by one user may appear on the profiles or feeds of other users depending on a number of factors, including privacy settings and which users were tagged or mentioned.

44. An Instagram "story" is similar to a post but can be viewed by other users for only 24 hours. Stories are automatically saved to the creator's "Stories Archive" and remain on Meta's servers unless manually deleted. The usernames of those who viewed a story are visible to the story's creator until 48 hours after the story was posted.

45. Instagram allows users to broadcast live video from their profiles. Viewers can like and add comments to the video while it is live, but the video and any user interactions are removed from Instagram upon completion unless the creator chooses to send the video to IGTV, Instagram's long-form video app.

46. Instagram Direct, Instagram's messaging service, allows users to send private messages to select individuals or groups. These messages may include text, photos, videos, posts, videos, profiles, and other information. Participants to a group conversation can name the group and send invitations to others to join. Instagram users can send individual or group messages with "disappearing" photos or videos that can only be viewed by recipients once or twice, depending on settings. Senders can't view their disappearing messages after they are sent but do have access to each message's status, which indicates whether it was delivered, opened, or replayed, and if the recipient took a screenshot. Instagram Direct also enables users to video chat with each other directly or in groups.

47. Instagram offers services such as Instagram Checkout and Facebook Pay for users to make purchases, donate money, and conduct other financial transactions within the Instagram platform as well as on Facebook and other associated websites and apps. Instagram collects and retains payment information, billing records, and transactional and other information when these services are utilized.

48. Instagram has a search function which allows users to search for accounts by username, user activity by location, and user activity by hashtag. Hashtags, which are topical words or phrases preceded by a hash sign (#), can be added to posts to make them more easily searchable and can be "followed" to generate related updates from Instagram. Meta retains records of a user's search history and followed hashtags.

49. Meta collects and retains location information relating to the use of an Instagram account, including user-entered location tags and location information used by Meta to personalize and target advertisements.

50. Meta uses information it gathers from its platforms and other sources about the demographics, interests, actions, and connections of its users to select and personalize ads, offers, and other sponsored content. Meta maintains related records for Instagram users, including information about their perceived ad topic preferences, interactions with ads, and advertising identifiers. This data can provide insights into a user's identity and activities, and it can also reveal potential sources of additional evidence.

51. In some cases, Instagram users may communicate directly with Meta about issues relating to their accounts, such as technical problems, billing inquiries, or complaints from other users. Social networking providers like Meta typically retain records about such communications, including records of contacts between the user and the provider's support services, as well as records of any actions taken by the provider or user as a result of the communications.

52. For each Instagram user, Meta collects and retains the content and other records described above, sometimes even after it is changed by the user (including usernames, phone numbers, email addresses, full names, privacy settings, email addresses, and profile bios and links).

53. In this investigation, I have learned through apartment security footage that there were potentially four individuals in the immediate area during the shooting of GUSTAVUS-HALE at approximately 8:00 pm. According to an Instagram message sent at 3:41pm on the date of the homicide, LTT_YUNGIN user was intending to meet with ZION, DARIUS, and EJ. It is believed that the above-mentioned accounts within this warrant belong to these three individuals. In my training and experience, evidence of who was using Instagram and from where, and evidence related to criminal activity of the kind described above, may be found in the files and records described above. This evidence may establish the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or, alternatively, to exclude the innocent from further suspicion.

54. Based on my training and experience, stored data, such as instant messages, emails, photos, videos, and documents, are often created and used in furtherance of criminal activity, including to communicate and facilitate the offenses under investigation. Thus, stored communications and files connected to an Instagram account may provide direct evidence of the offenses under investigation and can also lead to the identification of co-conspirators and instrumentalities of the crimes under investigation. In particular, here, learning the identities of the individuals who were meeting Instagram user LLT_YUNGIN prior to the homicide will help further the

investigation and potentially identify all parties involved or knowledgeable of the events that occurred and leading up to the death of GUSTAVUS-HALE.

55. In addition, the user's account activity, logs, stored electronic communications, and other data retained by Meta can indicate who has used or controlled the Instagram account. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, subscriber information, messaging logs, documents, and photos and videos (and the data associated with the foregoing, such as geolocation, date and time, may be evidence of who used or controlled the account at a relevant time, and device identifiers and IP addresses can help to identify which computers or other devices were used to access the account. Such information also allows investigators to understand the geographic and chronological context of access, use, and events relating to the crime under investigation.

56. Account activity may also provide relevant insight into the account owner's state of mind as it relates to the offenses under investigation. For example, information on the account may indicate the owner's motive and intent to commit a crime (*e.g.*, information indicating a plan to commit a crime), or consciousness of guilt (*e.g.*, deleting account information in an effort to conceal evidence from law enforcement).

57. Other information connected to the use of an account may lead to the discovery of additional evidence. For example, accounts are often assigned or

associated with additional identifiers such as account numbers, advertising IDs, cookies, and third-party platform subscriber identities. This information may help establish attribution, identify and link criminal activity across platforms, and reveal additional sources of evidence.

58. Therefore, Meta's servers are likely to contain stored electronic communications and information concerning subscribers and their use of Instagram. In my training and experience, such information may constitute evidence of the crimes under investigation including information that can be used to identify the account's user or users. Specifically, information obtained from Instagram accounts belonging to Instagram User IDs: **50416429509 and 11543316551** is crucial to the ongoing investigation into the homicide. This information could show communication between co-conspirators such as the who, what, where, when, why, and how the homicide occurred. In addition to identification, Instagram records, both past and present, could help determine a pattern of life for the person who maintains those Instagram accounts, which could assist in locating that person. Finally, based on **KJ (IDs: 50416429509 and 11543316551)** use of Instagram to facilitate its interactions with LLT_YUNGIN and other involved parties, it is likely that the target accounts utilize Instagram for day-to-day interactions, including, potentially, planning and devising to rob GUSTAVUS-HALE of the money used to purchase GUSTAVUS-HALE's firearm.

## Conclusion

59. Based on the foregoing, I request that the Court issue the proposed search warrant.

60. Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant. The government will execute this warrant by serving it on Meta. Because the warrant will be served on Meta, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

61. I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is not public. Disclosure could provoke the destruction of evidence or the flight of the unknown subjects. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation.

_____
SA Laura Tuteral
Federal Bureau of Investigation

Sworn to by telephone this 16th day of June, 2022.

_____
United States Magistrate Judge Jodi F. Jayne
Northern District of Oklahoma

## ATTACHMENT A

### Property to Be Searched

This warrant applies to information associated with Instagram accounts, **ID: 50416429509** and **ID: 11543316551** that are stored at premises owned, maintained, controlled, or operated by Meta Platforms, Inc., a company headquartered at 1601 Willow Road, Menlo Park, California.

## ATTACHMENT B

### Particular Things to be Seized

### I.    Information to be disclosed by Meta Platforms, Inc. ("Meta")

To the extent that the information described in Attachment A is within the possession, custody, or control of Meta, regardless of whether such information is located within or outside of the United States, and including any emails, records, files, logs, or information that has been deleted but is still available to Meta, or has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Meta is required to disclose the following information to the government for each account or identifier listed in Attachment A:

A.    All business records and subscriber information, in any form kept, pertaining to the Account, including:

1.    Identity and contact information (past and current), including full name, e-mail addresses, physical address, date of birth, phone numbers, gender, hometown, occupation, websites, and other personal identifiers;

2.    All Instagram usernames (past and current) and the date and time each username was active, all associated Instagram and Facebook accounts (including those linked by machine cookie), and all records or other information about connections with Facebook, third-party websites, and mobile apps (whether active, expired, or removed);

3.    Length of service (including start date), types of services utilized, purchases, and means and sources of payment (including any credit card or bank account number) and billing records;

4.    Devices used to login to or access the account, including all device identifiers, attributes, user agent strings, and information about networks and connections, cookies, operating systems, and apps and web browsers;

5. All advertising information, including advertising IDs, ad activity, and ad topic preferences;

6. Internet Protocol ("IP") addresses used to create, login, and use the account, including associated dates, times, and port numbers, from **December 22, 2021 to present**;

7. Privacy and account settings, including change history; and

8. Communications between Meta and any person regarding the account, including contacts with support services and records of actions taken;

B. All content (whether created, uploaded, or shared by or with the Account), records, and other information relating to videos (including live videos and videos on IGTV), images, stories and archived stories, past and current bios and profiles, posts and archived posts, captions, tags, nametags, comments, mentions, likes, follows, followed hashtags, shares, invitations, and all associated logs and metadata, from **December 22, 2021 to present**;

C. All content, records, and other information relating to communications sent from or received by the Account from **December 22, 2021 to present**, including but not limited to:

1. The content of all communications sent from or received by the Account, including direct and group messages, and all associated multimedia and metadata, including deleted and draft content if available;

2. All records and other information about direct, group, and disappearing messages sent from or received by the Account, including dates and times, methods, sources and destinations (including usernames and account numbers), and status (such as delivered, opened, replayed, screenshot);

3. All records and other information about group conversations and video chats, including dates and times, durations, invitations, and participants (including usernames, account numbers, and date and time of entry and exit); and

4. All associated logs and metadata;

D. All content, records, and other information relating to all other interactions between the Account and other Instagram from **December 22, 2021 to present**, including but not limited to:

1. Interactions by other Instagram users with the Account or its content, including posts, comments, likes, tags, follows (including unfollows, approved and denied follow requests, and blocks and unblocks), shares, invitations, and mentions;

2. All users the account has followed (including the close friends list), unfollowed, blocked, unblocked, muted, restricted, or denied a request to follow, and of users who have followed, unfollowed, blocked, unblocked, muted, restricted, or denied a request to follow the account;

3. All contacts and related sync information; and

4. All associated logs and metadata;

E. All records of searches performed by the account from **December 22, 2021 to present**; and

F. All location information, including location history, login activity, information geotags, and related from **December 22, 2021 to present**.

Meta is hereby ordered to disclose the above information to the government within **14 days** of issuance of this warrant.

## II. Information to be seized by the government

All information described above in Section I that constitutes fruits, contraband, evidence, and/or instrumentalities of violations of 18 U.S.C. §§ 1151, 1152, 1153, and 1111 (First Degree Murder in Indian Country), as well as 18 U.S.C. § 924(c)(1)(A)(iii) (Discharging a Firearm in Furtherance of a Crime of Violence), the information pertaining to the homicide that occurred on or about January 22, 2022, those violations involving an unknown suspect(s), but related to the Instagram accounts, **ID: 50416429509** and **ID: 11543316551**, including, for each account or identifier listed on Attachment A, information pertaining to the following matters:

(a)    Information pertaining to the homicide of BRADLEE GUSTAVUS-HALE to include pertinent communications between conspirators, location data leading up to and at the time of the homicide and any preparatory steps taking in furtherance of the murder.

(b)    Evidence indicating how and when the Accounts were accessed or used, to determine the geographic and chronological context of account access, use, and events relating to the crime under investigation and to the account owners;

(c)    Evidence indicating the Account owner's state of mind as it relates to the crime under investigation;

(d)    The identity of the person(s) who created or used the Accounts, including records that help reveal the whereabouts of such person(s).

(e)    The identity of the person(s) who communicated with the Accounts about matters relating to the sale of a gun(s) by GUSTAVUS-HALE, as well as matters relating to the death of GUSTAVUS-HALE, including records that help reveal their whereabouts.

This warrant authorizes a review of electronically stored information, communications, other records and information disclosed pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI may deliver a complete copy of the disclosed electronic data to the custody and control of attorneys for the government and their support staff for their independent review.